**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**AXA XL INSURANCE COMPANY UK LIMITED,**

**Plaintiff,**

**v.**

**EXEL INC., et al.,**

**Defendants.**

**Civil Action No. 23-21874 (WJM)**

**OPINION AND ORDER**

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff AXA XL Insurance Company UK Limited ("Plaintiff") pursuant to Federal Rule of Civil Procedure 45(d)(2)(B) seeking to compel non-party CSL GLOBAL LTD ("CSL") to produce subpoenaed documents, and to testify at a deposition to authenticate those documents. *See* Dkt. No. 57 at p. 1. CSL as well as Defendants EXEL INC. d/b/a DHL Supply Chain Services USA ("DHL Supply Chain") and EXEL FREIGHT CONNECT INC. d/b/a DHL Transport Brokerage ("DHL Transport") (together, "Defendants") oppose the motion. *See* Dkt. No. 59. Plaintiff replied. *See* Dkt. No. 61.

The Court has carefully considered the relevant submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion [Dkt. No. 57] is **DENIED**.

## I. BACKGROUND

This is a subrogation action by Plaintiff for damages that arose from the alleged failure of Defendants to properly transport cargo on behalf of insured shipper Moet Hennessey ("Moet"). *See* Dkt. No. 28, Amended Complaint at ¶¶ 5, 40. Plaintiff asserts claims for carrier liability under the Carmack Amendment of the Interstate Commerce Act—49 U.S.C. §14706—and breach of

contract. *Id*. at ¶¶ 40-46. The contract in question was for the shipment of three separate cargoes of champagne, consisting of a total of 1,786 cases, to be shipped in "good order, condition and quantity" from North Bergen, New Jersey—on behalf of Moet—to Lakeland, Florida. *Id*. at ¶ 16.

The truck carrying the cargoes was in a fatal accident along its route near Hampton County, South Carolina. *Id*. at ¶ 17. Moet Hennessey had the shipments returned to North Bergen for inspection, where a survey was conducted by EIMC, followed by a joint survey conducted by EIMC and CSL. *Id*. ¶ 20. The cargo had "sustained physical damage and breakage to the bottles resulting in shock to the glass which made the champagne unfit for consumption and otherwise in an unsound condition." *Id*. at ¶ 21. Plaintiff further alleges that the Defendants did not comply with New Jersey's state permitting program or federal regulations in conducting the shipment of the champagne. *Id*. at ¶¶ 24-26.

In the present motion, which was filed by Plaintiff on February 25, 2026, Plaintiff seeks an order compelling non-party CSL to provide an original copy of their survey report on the damage to the cargoes, to produce any related "photographs, enclosures & all related file correspondence & writings", and to appear for a deposition in order to authenticate the documents produced. *See* Dkt. No. 57-1 at p. 1-2.[1]

Defendants provided a copy of the original CSL survey to the Plaintiff on September 4, 2025. *Id*. at p. 4. Plaintiff was concerned about the Word Document format of the report copy, as well as the lack of accompanying photographs. *Id*.; *see also* Dkt. No. 59 at p. 3-4.

This Court entered an Order on October 16, 2025, directing the Defendants to designate all 30(b)(6) witnesses and dates for depositions by November 30, 2025, and ordered that fact discovery was to be concluded by December 15, 2025. *See* Dkt. No. 46.

[1] Plaintiff had originally requested from the Defendants "all survey, security, inspection and/or other reports related to the subject cargos and/or the damage and their non-delivery" in October of 2024. *Id*. at p. 4.

On October 30, 2025, Plaintiff served CSL with the two subpoenas at issue here, the first one requesting the original survey report along with all accompanying files and correspondence, and the second one seeking a deposition to authenticate those documents. *See* Dkt. Nos. 57-2 at p. 1-2, 57-3 at p. 1-2.

After a series of communications between the parties and letters filed with this Court concerning this disputed discovery and other issues, the Court directed the parties to meet and confer and submit a joint letter of five pages or less outlining their remaining discovery disputes by December 1, 2025. *See* Dkt. No. 52.

The parties engaged in a meet and confer in November of 2025. *See* Dkt. No. 59 at p. 5-6. Counsel for Defendants filed a letter with this Court on December 1, 2025 stating that the remaining discovery disputes included the subpoenas served on CSL, and that they were continuing to work together to narrow the issues. *See* Dkt. No. 53. Defendants have stated that in e-mail correspondence between the parties, Defendants' and CSL's counsel "confirmed that any stipulated facts and agreement would be in lieu of subpoena compliance" and "attempted to work out a stipulation that would have obviated the need both for a deposition of a corporate representative from CSL … and further document production from CSL." *See* Dkt. No. 59 at p. 5.

This Court held a telephone conference with the parties on December 17, 2025, after which the fact discovery deadline was extended to February 17, 2026. *See* Dkt. No. 54. During a February 18, 2026 telephone conference with the parties, the Court directed the Plaintiff to file its Motion to Compel by February 25, and for any response and subsequent reply to be filed by March 4 and March 11, respectively. *See* Dkt. No. 56.

**A. MOTION TO COMPEL**

Plaintiff filed the present motion on February 25, 2026. *See* Dkt. No. 57. In its motion, Plaintiff asserts that it complied with the requirements of Federal Rule of Civil Procedure 45 in

serving its subpoenas on CSL and argues that because CSL did not formally object or file a motion to quash the subpoenas, "the Court must afford Plaintiff the relief it seeks." Dkt. No. 57-9 at p. 5-6. On the question of relevancy, the Plaintiff cited Court precedents stating that relevancy is to be construed broadly and that Magistrate Judges have significant discretion over discovery disputes. *Id*. at p. 6-7 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *TattleTale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, 2012 U.S. Dist. LEXIS 50102, at *8 (D.N.J. April 10, 2012)). Plaintiff's motion then "invites the Court to examine the described circumstances … to determine the relevance of Plaintiff's demand." Dkt. No. 57-9 at p. 7. Plaintiff further referred to the fact that Counsel for Defendants also represents CSL and contends "these failures to comply arise from having the same counsel represent defense interests while at the same time representing CSL Global Ltd" and that CSL is "unfairly influenced by the self-serving interests of DHL Defendants." *Id*. at p. 4.

In response, CSL states that the documents sought by Plaintiff are "in storage, offsite … [and] burdensome to retrieve and examine." *See* Dkt. No. 59 at p. 4. CSL also maintains that it—as a non-party—conducted the report for another non-party, Collyers, an administrator for the Defendants' insurance company. *Id*. at p. 3-4. Moreover, the surveyor who did the inspection, Peter Ianniello, passed away in July of 2024, and would of course be unable to authenticate the relevant report. *Id*.

CSL contends that both in communications between the parties and before the Court, Plaintiff has failed to articulate specific reasons why the original CSL report is necessary and reiterates that Plaintiff has access both to a copy of the CSL report and another independent survey conducted on the damage. *Id*. at p. 4, 6-7.

CSL further contends that at the meet and confer held in November of 2025, Plaintiff sought a stipulation that a portion of the CSL report designating Defendant DHL as an "inland transit trucker" qualified them as a motor carrier under the Carmack Amendment. *Id*. at p. 5-6. CSL maintains that "[n]either Mr. Ianello, while alive, nor anyone at CSL, would be qualified either factually or legally to make such an assertion" and maintains that the requests were therefore not being made in good faith. *Id*. at p. 6.

Finally, CSL notes that it would have been improper for them to file a Motion to Quash or a written objection under Local Rule of Civil Procedure 37.1, and that Plaintiff failed to comply with Rule 37.1 when they did not include a certification of "good faith efforts" to resolve the dispute in their Motion to Compel. *Id.* at p. 7-8.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. "Although

the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Rule 26(b)(2)(C) specifically provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or local rules" when the court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). The party issuing a subpoena must show why the requested discovery is relevant and must ensure that they avoid "imposing undue burden or expense on a person subject to the subpoena." *Id.;* Fed. R. Civ. P. 45(d)(1). If the issuing party makes this showing of relevancy, an objecting party must show why that discovery should "nevertheless be denied." *In re Novo Nordisk,* 530 F. Supp. 3d 501.

Although the traditional rules of discovery apply to non-parties as they do parties, it is "well settled that the Court affords non-parties greater protection from discovery than a party." *Canca v. Wayfair LLC*, No. 22-2518 (GC/RLS), 2023 WL 7221148, at *3 (D.N.J. Nov. 2, 2023); *see also Burgess v. Galloway,* No. 20-06744 (FLW/DEA), 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021). When seeking discovery from a non-party, the issuing party must make a "stronger showing of relevance than for simple party discovery." *Blueprint Cap. Advisors, LLC v. New*

*Jersey,* No. 25-01995 (JXN/MAH), 2026 WL 836548, at *2 (D.N.J. Mar. 26, 2026) (quoting *Stamy v. Packer,* 138 F.R.D. 412, 419 (D.N.J. 1990)).

In applying Rules 26 and 45, the Court must assess the reasonableness of a subpoena served on a non-party by balancing several factors, including (1) relevance, (2) the necessity of the documents, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the documents are described, (6) the burden imposed on the non-party, and (7) the recipient of the subpoena's status as a non-party. *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d at 501; *see also Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-4046 (PGS/DEA), 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014). Under Rule 45, the Court has "broad discretion regarding the enforcement of subpoenas." *See Canca*, 2023 WL 7221148, at *3 (quoting *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP,* No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012)); *see also Forrest v. Corzine,* 757 F. Supp.2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.")

Another way in which non-parties receive greater protection in discovery matters is in how objections to discovery requests are treated. *Canca*, 2023 WL 7221148, at *3. Generally, Rule 45 requires a party receiving a subpoena to serve objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). However, the Court has construed this rule liberally when concerning a subpoena served on non-parties. *Canca*, 2023 WL 7221148, at *3; *see also D'Ambly v. Exoo, et al.,* No. 20-12880 (JKS/JSA), Dkt. No. 207 at p. 4 (D.N.J. June 17, 2024) (finding that the absence of a formal objection can be excused when counsel have engaged in a meet and confer and/or counsel is aware of an adversary's objections within fourteen days of service).

Finally, both parties and non-parties are bound by this Court's local rules on discovery motions. Local Civil Rule 37.1. Rule 37.1(a)(1) requires parties to confer in order to "resolve any discovery dispute" and to then bring any unresolved issues before a Magistrate Judge. L. Civ. R. 37.1(a)(1). The rule also expressly requires that this process "precede any formal motion." *Id*. Additionally, the rule requires any discovery motion to be accompanied by an affidavit in conformance with 28 U.S.C. § 1746, "certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement." L. Civ. R. 37.1(b)(1).

## III. DISCUSSION

### A. LOCAL RULE 37.1

The Court will first address the issues related to Local Rule 37.1. Plaintiff argued in their Motion to Compel that because CSL did not serve any formal objections to the subpoena(s), it effectively waived any objections and this Court "must afford Plaintiff the relief it seeks." Dkt. No. 57-9 at p. 6. CSL countered that any formal motion or objection prior to February 18, 2026 would have been improper under Local Rule of Civil Procedure 37.1, because the Court had not directed the parties to file any motions on the issue until its February 18 order, after the parties had failed to resolve the dispute in a meet and confer. Dkt. No. 59 at p. 7; *see also* Dkt. No. 56. Local Civil Rule 37.1(a)(1) provides that:

> Counsel shall confer to resolve any discovery dispute. Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge. This presentation shall precede any formal motion.

L. Civ. R. 37(a)(1).

The parties in this matter held a meet and confer in November of 2025. Dkt. No. 59 at p. 4-6. Plaintiff does not describe the meeting in depth in either its initial motion or reply brief, but CSL in its brief states that the meet and confer ended without resolving the discovery dispute at issue. *Id*. at 6. Defendant alleges that this was due in part to Plaintiff's refusal to disclose why the documents they sought were necessary, and because Plaintiff sought to obtain stipulations to which CSL objected. *Id*. The dispute was then brought to the Court's attention again with a letter filed by Plaintiff on February 16, 2026, that was addressed in the scheduled status conference on February 18, 2026. Dkt Nos. 55, 56. This Court then directed the Plaintiff to file its Motion to Compel by February 25, with a response due by March 4, 2026. Dkt. No. 56.

Based on the facts as outlined above, it would appear that CSL was in compliance with Local Rule 37.1(a)(1) by not submitting any formal objections until (1) a meet and confer had been held between the parties and (2) the remaining disputes—after the meet and confer was held—were brought to the attention of the Court. Therefore, CSL's lack of a formal objection does not automatically result in the relief that Plaintiff seeks.

It should also be noted that beyond Local Rule 37.1, non-parties receive greater protection in discovery matters in how objections to discovery requests are treated. *Canca*, 2023 WL 7221148, at *3. Rule 45 generally requires a party receiving a subpoena to serve objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). But as noted above, the Court has construed this rule liberally when concerning a subpoena served on non-parties. In *Canca v. Wayfair LLC*, the Court ruled that a non-party's "conversations" with a party regarding their concerns about the discovery request(s) was enough to make counsel "very much aware of the objections raised by the opposing party albeit they were not in writing." *Canca*, 2023 WL 7221148, at *3; *see also D'Ambly v. Exoo*, *et*

*al.*, No. 20-12880 (JKS/JSA), Dkt. No. 207 at p. 4 (finding that the absence of a formal objection can be excused when counsel have engaged in a meet and confer and/or counsel is aware of an adversary's objections within fourteen days of service.)

Although CSL is not penalized for its lack of a formal objection to the Plaintiff's subpoena(s) under Local Rule 37.1, this Court's approach to objections from non-parties would also serve to defeat Plaintiff's assertion that the lack of an objection should result in a grant of relief. According to the exhibits and statements submitted by both parties, the parties exchanged emails within fourteen days of service of the Plaintiff's subpoenas on October 31, 2025 that outlined CSL's concerns about the request. Counsel for CSL responded to Plaintiff via email on November 10, 2025 stating that there would be challenges in procuring the documents requested, and that the surveyor of the original CSL survey was deceased. Dkt. No. 57-1 at p. 4; Dkt. No. 57-5 at p. 2.

The parties filed a series of letters regarding their discovery disputes—including the CSL survey—which led this Court to order the meet and confer that would ultimately be held on November 26. Dkt Nos. 49-52. The letters filed with the Court were themselves also within the fourteen-day window after service of the subpoena. *Id*. Therefore, it is clear from the facts that Plaintiff was aware of CSL's objections within the applicable time frame, and that the parties to the subpoena were directed to resolve the issues in a meet and confer. *Id*.

Finally, Local Rule 37.1 requires any discovery motion to be accompanied by an affidavit in conformance with 28 U.S.C. § 1746, "certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement." L. Civ. R. 37.1(b)(1).

Such a certification was missing from Plaintiff's motion, and this Court has historically denied Motions to Compel on this ground. *See Ciarrocchi v. Unum Grp.*, No. 08-1704 (JBS/AMD), 2010 WL 11527405, at *2 (D.N.J. May 6, 2010); *see also City of Atl. City v. Zemurray St. Cap., LLC*, No. 14-5169 (NLH/AMD), 2019 WL 6255040, at *1 (D.N.J. Oct. 18, 2019); *Hall v. Cole,* No. 08-5904 (NLH/AMD), 2009 WL 3152120, at *2 (D.N.J. Sept. 25, 2009).

Although the procedural defect in the Plaintiff's motion would be a sufficient reason alone to deny its request for relief, the Court will nonetheless speak to the underlying merits of the Motion.

**B. THE MOTION TO COMPEL**

The Court is being asked to compel non-party CSL to (1) produce the original survey report along with accompanying documents and correspondence, and (2) designate a representative to testify and authenticate the documents at a deposition. *See* Dkt. No. 57 at p. 1.

The initial inquiry is to determine whether the Plaintiff has demonstrated that the discovery they seek is relevant. *In re Novo Nordisk*, 530 F. Supp. 3d 501. As discussed above, this must be a "stronger showing of relevance" when the discovery is sought from a non-party. *Blueprint Cap. Advisors,* 2026 WL 836548, at *2. Plaintiff does not set forth a specific argument for the relevance of the original CSL survey. *See generally* Dkt. No. 57. Plaintiff instead cites Court precedents to state that relevancy is to be construed broadly and that Magistrate Judges have significant discretion over discovery disputes. Dkt. No. 57-9 at p. 6-7 (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978); *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, 2012 U.S. Dist. LEXIS 50406 *8 (D.N.J. April 10, 2012)). Plaintiff's motion then "invites the Court to examine the described circumstances … to determine the relevance of Plaintiff's demand." Dkt. No. 57-9 at p. 7.

Plaintiff does—in the Preliminary Statement of its Motion to Compel and in its Reply Brief—raise the issue that Counsel for CSL also representing the Defendants raises potential "unfair[] influence[] by the self-serving interests of the DHL Defendants" and argues that CSL's "communications associated" with the report "may likely be unfavorable to Defendants DHL." Dkt. No. 57-9 at p. 4; Dkt. No. 61 at p. 3-4.

Discovery is a tool for substantiating a claim, and should not be used to allow parties to go "fishing through overbroad discovery requests based only on suspicion or speculation." *Blueprint Capital Advisors*, No. 25-1995 (JXN/MAH), 2025 WL 1766120, at *4 (D.N.J. June 26, 2025); *see also Hashem v. Hunterdon Cnty.,* No. 15-8585 (FLW/DEA), 2017 WL 2215122, at *3 (D.N.J. May 18, 2017) ("Subpoenaed information is not relevant to subject matter involved in the pending action if the inquiry is based on the party's mere suspicion or speculation." (quoting *Saller v. QVC, Inc.,* No. 15-2279, 2016 WL 8716270, at *5 (E.D. Pa. June 24, 2016)).

Plaintiff is arguing that the correspondence that goes along with the original CSL report is relevant because it "may likely be unfavorable" to the Defendants. Dkt. No. 61 at p. 3. This speculative statement—without any supporting factual allegations—is not an argument that this Court has historically found sufficient to compel discovery. In *Hashem v. Hunterdon Cnty*, this Court quashed subpoenas served on non-parties that were the current and former employers of the Plaintiff, who was alleging discrimination by the Defendant, another former employer. 2017 WL 2215122, at *1. The Defendant employer argued that the records were relevant because they "suspect[ed] Plaintiff's failure as a teacher [was] uniform with all her employers" and "heard that Plaintiff [was] running into the same problems with her new employer." *Id*. at 3. The Court rejected this argument, asserting that "mere suspicion" and "speculation" about the Plaintiff's performance at other jobs was an insufficient basis for finding the records relevant. *Id*.; *see also Blueprint*

*Capital Advisors*, 2025 WL 1766120, at *4-5 (finding that an allegation that a non-party was involved in a conspiracy with a Defendant—without a sufficient factual basis—was not enough to demonstrate relevance in order to compel discovery of the non-party's records).

Plaintiff in this matter has, like the plaintiffs in the above-cited cases, made an assertion based on its own suspicion and surmise. Therefore, its argument—that Counsel's representation of both Defendants and CSL raises an inference that the discovery sought from CSL "may likely be unfavorable"—is an insufficient basis for relevancy.

Even if the Plaintiff's argument did make the discovery relevant, the remaining factors for consideration counsel against granting the Motion to Compel. The burden is on the non-moving party to demonstrate that despite relevancy, a request should be denied because it is unduly burdensome. *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 501. Factors that are weighed by courts in determining whether a subpoena poses an undue burden—beyond relevance—include necessity, the breadth of the request, the particularity with which the documents are described, and the recipient of the subpoena's status as a non-party. *Id*.

In terms of the necessity and breadth of the documents sought, CSL notes that Plaintiff already has a copy of the CSL report, has other documents to support its claims, and even has another independent survey of the cargo. *See* Dkt. No. 59 at p. 3-4. Beyond the report itself, Plaintiff is requesting "all photographs, enclosures & all related file correspondence & writings." Dkt. No. 57-1 at p. 1-2.

In *Korotki v. Cooper Levenson, April Niedelman & Wagenheim, P.A.,* this Court denied a discovery request served on a non-party—despite the issuing party's demonstration of relevancy—because the discovery sought was both duplicative and overbroad. No. 20-11050 (CPO/MJS), 2022 WL 2191519, at *5-7 (D.N.J. June 17, 2022). Certain materials sought by the Plaintiff in that case

had already been provided to them, and for the ones that had not, the Court concluded that while the Plaintiff's requested discovery "could conceivably uncover relevant materials" it also "threaten[ed] to sweep in substantial irrelevant information." *Id.*

In addition to the fact that Plaintiff has a copy of the original CSL report, CSL put forward in their response that Plaintiff has not made clear why the additional information "accompanying" the original report is necessary. Dkt. No. 59 at p. 6-7. Plaintiff instead represented—in a status conference before the Court—that they were "not required to disclose this information … despite the Court's own acknowledgement that this would need to be disclosed in any motion seeking to compel production and compliance." *Id*. Finally, CSL maintains that compliance would be a substantial burden, as the hard copies of the documents were in offsite storage and the surveyor of the original report passed away during the pendency of the case in the summer of 2024. *Id*. at p. 3-4.

Because Plaintiff has not set forth an adequate basis for the relevancy of its request, and because the discovery would be duplicative and unduly burdensome on non-party CSL, the Court will not grant the Plaintiff's Motion to Compel.

The second subpoena seeking deposition testimony from a CSL designee will also be denied, as its purpose is to authenticate the discovery that this Court deems irrelevant and unduly burdensome. When the subject of a deposition subpoena is directly related to the underlying discovery sought in a separate request for production, this Court has generally treated the deposition subpoena's fate in tandem with the separate discovery request itself. *See Korotki,* 2022 WL 2191519, at *8, FN 20 (quashing a subpoena ad testificandum when the separate subpoena duces tecum sought production of the same information, and was found to be overly-broad and duplicative); *see also Ferrari v. Leib*, No. 24-7753 (ES/MAH), 2024 WL 4432747, at *3-5 (D.N.J.

Oct. 7, 2024) (denying a request to compel a deposition on a particular subject when the document subpoena on the same subject was denied for lack of relevancy).

**C. RULE 1.7**

Finally, Plaintiff—in its Reply brief—raised the issue of Rule of Professional Conduct 1.7, stating that CSL's Counsel also being the Counsel for Defendants "raises the clear potential that the dual representation … presents a concurrent conflict of interest." See Dkt. No. 61 at p. 3-4. Plaintiff makes this argument in conjunction with his contention that CSL's status as an unbiased non-party makes its findings critical, and that Defendants' Counsel serving as CSL's Counsel may be a violation of the rule. *Id*.

Rule 1.7 is designed to protect current and former clients from conflicts of interest that would be prejudicial to them, and parties generally do not have standing to disqualify a lawyer on the grounds of a conflict of interest unless they qualify as a current or former client. *Harish v. Arbit,* No. 21-11088 (EP/AME), 2025 WL 354434, at *5 (D.N.J. Jan 31. 2025). However, there is no rule in this Circuit expressly prohibiting an opposing party from raising a conflict of interest. *Id*. (citing *High 5 Games, LLC v. Marks*, No. 13-7161, 2018 WL 2278103, at *5 (D.N.J. May 18, 2018). A determination that a conflict should result in a lawyer's removal is "intensely fact-specific, and it is essential to approach such problems with a keen sense of particularity as well as a precise picture of the underlying facts." *Id*. (quoting *Caryle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996). Further, there must be a specific showing, and "surmise alone cannot support an order of disqualification." *Id*. (citing *Carreno v. City of Newark,* 834 F. Supp. 2d 217 at 224 (D.N.J. Nov. 29, 2011). Instances where courts in this jurisdiction have allowed for the removal of counsel—pursuant to a request from an opposing party—have been for specifically spelled out reasons that have given rise to serious concerns that

a conflict would cause prejudice to a client. *See Harish,* 2025 WL 354434, at *12-14 (disqualifying an attorney for violating rules 1.8(f) and 5.4(c) by improperly accepting payment from a third-party for the representation of defendants); *see also Wikes v. Passaic County,* No. 12-6498 (KSH/CLW), 2016 WL 852602, at *1-3 (D.N.J. Mar. 4, 2016) (granting a motion to disqualify where counsel was representing both a defendant accused of workplace harassment and a non-party who had previously accused the same defendant of workplace harassment, finding that representation of one would require attacking the credibility of the other); *Hunt v. Borough of Wildwood Crest,* No. 12-6887, 2016 WL 5723656, at *5 (D.N.J. Sep. 29, 2016) (granting a motion to disqualify brought by an opposing party when a lawyer's representation of two different clients in matters relating to the same defendant could result in impeaching or undermining one client in order to support the allegations of another).

Here, the Plaintiff—without filing an express Motion to Disqualify—raised the issue of a potential conflict by surmising that CSL's report and correspondence "may likely be unfavorable" to the Defendants. Dkt. No. 61 at p. 3. The Plaintiff did not, however, put forth specific reasons for making this conclusion, or how this potential conflict would specifically cause prejudice to the Defendants or CSL. *Id*. Accordingly, the Court is not presently in a position to make findings or conclusions regarding conflicts or disqualification.

## IV. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this on this 29th day of September, 2026,

**ORDERED** that Plaintiff's motion to compel [Dkt. No. 57], is **DENIED**

*s/ James B. Clark, III*
**JAMES B. CLARK, III**
**United States Magistrate Judge**